## Carnahan *versus* Brown.

A testator gave to three sons a tract of land to be divided among them in portions designated in the will, adding "further I devise, &c., to my said sons each and equal privilege for ever of the coal-bank now opened and the ground on the ridge adjacent, so far as may be necessary for digging and taking coal." *It seems* that the privilege extended to every part of the tract containing coal which might be mined through the opening. Per Thompson, C. J.

2. The devise as to the coal was a mere privilege and easement, an incorporeal hereditament and ejectment is not the remedy for an interruption of the right.

November 18th 1868. Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Error to the Court of Common Pleas of *Allegheny county:* No. 126, to October and November Term 1868.

This was an action of ejectment, brought by Alexander Carnahan against John Brown for the undivided two-thirds of 80 acres of coal under a tract of land in Union township, Allegheny county. The writ was issued to March Term 1868.

The land was originally the property of David Carnahan, who died about January 1825, having made his will, dated December 28th 1824, by which he devised as follows:—

"Sixthly, my real estate, consisting of 200 acres, more or less, situate in St. Clair township aforesaid, I give, &c., to my three sons, William, Alexander and Joseph, and their heirs and assigns for ever, to be divided among them as follows, viz.: to William 80 acres, adjoining the manor line and Chess line; to Alexander 80 acres next adjoining the above, including the *mantion*-house, barn, &c.; and to Joseph, the remaining 40 acres, next to Henry's line; the division line to run from Plummer's line to Carter's line, but to be so run that each shall have a quantity of woodland in proportion to the number of acres devised to him; and further I devise and give to my said sons each an equal privilege for ever of the coal-bank now *opined*, and the ground on the ridge *adjacant*, so far as may be necessary for digging and taking coal."

[*Carnahan v.* Brown.]

Shortly after the testator's death his sons, the devisees, made a parol partition of the lands devised to them, in accordance with the will. On the 18th of June 1831 Alexander conveyed to William six acres of his allotment adjoining William's allotment. William died in 1832, having devised his allotment and the six acres obtained from Alexander to his children. Brown, the defendant, derived his title from these devisees through divers conveyances.

Joseph Carnahan, on the 27th of August 1862, conveyed his allotment to Alexander, the plaintiff. On the 9th of July 1860 the plaintiff conveyed to James Woods "all the bituminous or stone coal lying and being under" his allotment and Joseph's which had been conveyed to him as above stated. At the trial the plaintiff withdrew his claim as to one-third of the coal, which he had claimed as alienee of Joseph. This claim therefore was for one-third of the coal under the portion that had belonged to William upon the theory that by the provision of the will in relation to the coal a corporeal interest to the extent of one-third had been devised to each of the sons under *all* the land.

The "coal-bank" referred to in the will was on the part of the land allotted to Alexander, the plaintiff. The defendant submitted a number of points, amongst which were the following:—

"1. That the plaintiff has failed to show title to the coal for which he brings this action.

"2. That inasmuch as the undisputed testimony shows that the coal-bank mentioned in the will of David Carnahan was and is opened on the plaintiff's purpart or share of the land, the plaintiff has no interest in the coal which is the subject-matter of this suit."

The court (Stowe, J.) refused the points, and directed the jury to find a verdict for the plaintiff for "an undivided one-third interest in the coal described in the writ," subject to the opinion of the court on the questions in the points which were reserved. The jury accordingly found for the plaintiff "for the one-third of the coal," subject to the opinion of the court on the questions reserved.

The court afterwards entered judgment for the defendant on the points reserved *non obstante veredicto.*

The plaintiff took a writ of error and assigned for error the entering judgment for the defendant.

*N. P. & C. S. Fetterman,* for plaintiff in error.—The ownership of the minerals may be in one person whilst that of the surface is in another: Caldwell *v.* Fulton, 7 Casey 484. A will must be construed according to the intention of testator: McKeehan *v.* Wilson, 3 P. F. Smith 74; and according to the state of things at his death: Fox *v.* Phelps, 17 Wend. 393; and by a comparison

[Carnahan v. Brown.]

of the various devises: Cook v. Holmes, 11 Mass. R. 528; Morrison v. Semple, 6 Binn. 94. A grant of a thing by general description carries the land occupied by it: 2 Wash. Real Prop. 664, 2d ed.; Wooley v. Inhabitants of Groton, 2 Cush. 305; Johnson v. Raynor, 6 Gray 107; Co. Litt. 4 b; Cro. Eliz. 522; Clap v. Draper, 4 Mass. R. 266; Fish v. Sawyer, 11 Conn. 545. When the intent is to give the entire usufruct and power of disposal, the legal title will pass: Lord Mountjoy's Case, 4 Leon. 147; Co. Litt. 104 b; Johnstown Iron Co. v. Cambria Iron Co., 8 Casey 241; Clement v. Youngman, 4 Wright 341; Gloniger v. Franklin Coal Co., 5 P. F. Smith 9; Huff v. McCauley, 3 Id. 207; Doe v. Woods, 2 B. & Ald. 719; Grubb v. Bayard, 2 Wall. Jr. 81; Dark v. Johnston, 5 P. F. Smith 164.

*M. W. Acheson* and *J. P. Brown*, for defendant in error.—The construction contended for is forced and defeats the intention: Frederick v. Gray, 10 S. & R. 187; Fleming v. Kerr, 10 Watts 444. The devise was a mere license: 2 Bl. Com. 34; Washburn on Easements 14, 596; Johnstown Iron Co. v. Cambria Iron Co., 8 Casey 241; Clement v. Youngman, 4 Wright 341; Gloninger v. The Franklin Coal Co., 5 P. F. Smith 9.

The opinion of the court was delivered, January 11th 1869, by THOMPSON, C. J.—In the view we take of this case, there is but a single question in it, and that relates to the nature and extent of the interest which the plaintiff acquired in the land of his brother William, under the will of his father.

We state the question thus, because it is in relation to that portion of the estate of David Carnahan, that this controversy exists. I am strongly inclined to the opinion that the privilege extended to every part of the tract containing coal, which might be mined through the opening or entrance designated in the will as the coal-bank. This, however, is not material now.

On the part of the plaintiff it was contended, so far at least as William's share of the land was concerned, that the testator by his will, severed the coal from the surface lands and made two distinct estates out of it; that is to say, gave a several interest to William in the surface land, and an undivided interest in common with his brothers in the coal in place, under it.

That he did not so mean to treat William's interest, is not reconcilable with the condition of things at the time. The opening or coal-bank was on the plaintiff's share, and it is just as likely that what he intended in regard to the one, so far as the coal was concerned, he intended as to the others. But Alexander never admitted that his surface land was separated from the coal in it, for he sold to William some six or nine acres without restriction.

[*Carnahan v.* Brown.]

On the other hand, the defendant contends that the will was a devise of a mere privilege and easement, an incorporeal hereditament, a right in, or issuing out of, the land, and that ejectment is not a remedy for a deprivation or interruption of such a right or privilege.   That this is so, there is no question, and we need only cite Johnstown Iron Co. *v.* The Cambria Iron Co., 8 Casey 241; Clement *v.* Youngman, 4 Wright 341; Gloninger *v.* The Franklin Coal Co., 5 P. F. Smith 9; and Grove *v.* Hodges, Id. 504, to prove it.

The words of the will immediately bearing on the question, after devises amongst his sons in severalty by description, are " And further, I devise and give to my said sons each an equal privilege (not share) for ever of the coal bank now opened, and the ground on the ridge adjacent, so far as may be necessary for digging and taking coal."

This was obviously but a grant or devise of a privilege in the coal-bank, not a share or portion of the coal, and an easement in the adjacent land necessary to its enjoyment.   We do not consider it necessary in this opinion to give or refer to the many instances in the books, where like conclusions have followed devises and grants similar to the devise just quoted.   This has been done in the cases of The Johnstown Iron Co. *v.* The Cambria Iron Co., and in Clement *et al. v.* Masser *et al.*, *supra.*   They fully sustain the conclusion we have arrived at, that nothing but a privilege was conferred by the devise in question; and it follows that ejectment will not lie for its interruption.

It is plain that the testator meant that each of his sons might take coal from the opened mine for his own use, or otherwise, without the expense of making any new opening on his own land. Perhaps, too, he may not have known that there was coal to be found almost everywhere over the tract, as it turned out, and thus was desirous that each son should have the convenience of free fuel to be procured at that place, rather than to procure it elsewhere by purchase.   Neither the words nor intent deducible from the consideration of the whole, or any part of the will, lead to any other than this as the proper conclusion, as to what was meant by this clause of the will, and this conclusively determines the case against the plaintiff.

The question of estoppel is out of the controversy in this view of it, so far as the action of ejectment is concerned at least. Whether there be, or be not grounds for it, it is not necessary to consider, for ejectment as a remedy fails, and we will not discuss that point.

For the reasons given the judgment is affirmed.